UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | CAUSE NO.  1:07-cv-1384-WTL-DML |
| MARION T, LLC, ) ) | |
| Defendant. ) | |

### ENTRY ON MOTIONS FOR SUMMARY JUDGMENT

This cause is before the Court on two motions for summary judgment filed by Plaintiff Travelers Property Casualty Company of America ("Travelers"). The motions are fully briefed and the Court, being duly advised, **GRANTS** both motions for the reasons set forth above.

### SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a

motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## BACKGROUND

The following are facts of record[1] viewed in the light most favorable to Defendant Marion T, LLC ("Marion"), the non-moving party. Additional facts, also viewed in the light most favorable to Marion, are introduced as relevant to the discussion below.

On October 4, 2005, a fire occurred in a manufacturing facility owned by Marion ("the Facility"). Marion had purchased the Facility from Thomson Electronics in March 2005. Thomson had used the Facility for the fabrication of televison picture tubes, but had ceased manufacturing operations in approximately May 2004. The Facility consisted of over one million square feet covering several city blocks. The equipment necessary for heating and cooling the Facility (hereinafter referred to collectively as the "Mechanical Equipment") was housed in two locations, the VLS Building and the North Powerhouse. Prior to relinquishing possession of the Facility to Marion, Thomson Electronics shut down and drained the Mechanical Equipment. The Mechanical Equipment remained dormant up until the October 4th

---

[1] Marion objects to the fact that Travelers' two summary judgment briefs contain a combined 227 paragraphs of material facts. While there are certainly some facts that could have been omitted for the sake of brevity or contained in a "background" section, the Court does not find Travelers' statements of material fact sections objectionable. The facts are well organized, well supported by citation to evidence in the record, and do a good job of telling a complete and understandable story. Nothing about them suggests that they were intended simply to burden Marion, and they certainly are not indicative of "litigation blitzkrieg" as Marion suggests. The Court notes that Marion was required only to respond to those facts which it deemed material and disputed–in other words, those facts which it believes demonstrate that Travelers is not entitled to summary judgment. Marion was also required to couple any such response with appropriate citations to evidence of record in order to demonstrate that the fact was genuinely in dispute. Local Rule 56.1(b). Instead, as to many of the facts asserted (and supported) by Travelers, Marion simply responded that the fact was "disputed," without citation to any evidence. Such responses are wholly unhelpful to the Court and are insufficient to create an issue of fact.

fire. At any time prior to the fire it would have been possible to reassemble and restart the Mechanical Equipment necessary to provide heat to the Facility, although it would have been a time-consuming endeavor requiring the efforts of two or three people.

The fire was started when a salvage contractor working in the main manufacturing area of the Facility cut a high voltage electrical cable. The resulting electrical arcing caused a fire in the main manufacturing area itself and in the adjacent North Powerhouse. While the Mechanical Equipment was not damaged during the fire, its power source was; as a result, it was not possible to use it to provide heat to the Facility (or for anything else) following the fire.

The Facility was covered by an insurance policy issued by Travelers ("the Policy"). In response to Marion's insurance claim following the fire, Travelers hired an electrical contractor and professional electrical engineers to determine the scope and value of the damage to Marion's electrical equipment. Travelers also retained a fire restoration contractor to determine the scope and value of all building damage. Travelers' investigation took several months. In the meantime–in November or December– Nancy Fisher, the Travelers adjuster assigned to Marion's claim, predicted during a phone conversation that Marion would "like the number" that Travelers arrived at and suggested that it would probably be between $5 and $6 million.

On June 14, 2006, Travelers provided its contractors' estimates to Marion. In a letter dated June 26, 2006, Travelers asked Marion to provide it with a sworn statement of its loss along with its own contractors' estimates and other supporting documentation. Pursuant to the Policy, Marion was required to comply with this request within 60 days.

On July 10, 2006, Travelers and its contractors met with Joe Hoffman, a public adjuster who had been hired by Marion, at the Facility to discuss Travelers' contractors' estimates.

Marion did not bring its own contractors to the meeting and had not yet provided Travelers with its own contractors' estimates because Hoffman preferred to ascertain Travelers' position regarding depreciation before doing so. As a result of the July 10th meeting, Travelers instructed its contractors to include some additional items in their estimates. On July 11, 2006, Travelers made an advance payment to Marion in the amount of $500,000.

On or about July 12, 2006, Marion submitted a "Partial Sworn Statement in Proof of Loss" claiming $4,227,378.03 in partial damages as a result of the fire. However, Marion did not provide Travelers with its contractors' estimates or any other information to support the claimed damages; rather, it simply supplied an amount without any explanation. Travelers rejected this unsupported proof of loss statement and extended Marion's deadline to comply with its obligation under the Policy to October 9, 2006.

Travelers received its contractors' revised estimates by August 17, 2006. On September 12, 2006, Travelers informed Marion that it had determined that the actual cash value of all the property directly damaged by the fire, after application of the Policy deductible, was $2,697,230.92. On September 15, 2006, Hoffman sent Travelers an estimate from one of Marion's contractors dated June 7, 2006, in the amount of $15,194,099.71 ("the Bowman estimate"). Marion did not provide Travelers with the information on which the Bowman estimate was based, which included the estimates of subcontractors. Indeed, the Bowman estimate included $5,927,000.00 for an electrical subcontractor and $5,975,000.00 for a mechanical subcontractor, but did not include the subcontractors' bids or otherwise explain what work the subcontractors would perform or why the work was necessary and related to the fire.

On September 27, 2006, Travelers paid Marion $2,197,230.92, which was the actual cash

value of the loss as calculated by Travelers minus the deductible and the $500,000 advance payment. Travelers also compensated Marion for its claim data expenses, bringing the total payments to $2,742,230.92.

On or about October 9, 2006, Marion submitted a supplemental partial sworn statement in proof of loss in the amount of $15,184,099.71. This supplemental proof of loss was based on the Bowman estimate but again did not provide a detailed explanation of the repairs to be made as had been requested by Travelers.

Despite additional exchanges, the parties could not agree upon the amount of loss. Accordingly, on February 27, 2007, Travelers invoked the appraisal provision of the Policy. While the appraisal process was ongoing, Travelers filed this declaratory judgment action.

The appraisal process was completed in July 2009. The final report establishes the actual cash value of the "undisputed loss"–that is, of the damage that the parties agree is covered by the Policy–as $3,359,892.00. The difference between this "undisputed loss" amount and the amount already paid by Travelers is $617,661.08, which Travelers has now paid to Marion. The final report also establishes the actual cash value of the 84 pieces of Mechanical Equipment identified by Marion during the appraisal process as suffering damage as a result of the fire. Because Travelers disputes that any damage to the Mechanical Equipment that may have occurred is covered by the Policy, the final appraisal report refers to these items as the "disputed loss."

## DISCUSSION

Travelers has filed two motions for summary judgment. In the first, it seeks summary judgment on Counts I and II of its First Amended Complaint. In the second, it seeks summary judgment on Marion's counterclaim for breach of contract and bad faith. Each motion will be

addressed, in turn, below.

*Counts I and II of Travelers' First Amended Complaint*

For all practical purposes, Counts I and II of Travelers' First Amended Complaint both seek the same relief–a declaration that Marion is not entitled to any payment under the Policy for the Mechanical Equipment–but assert alternative grounds for that relief. In Count I, Travelers alleges that the Mechanical Equipment is not covered by the Policy because the Policy applies only to "direct physical loss of or damage to" the Facility and the Mechanical Equipment did not suffer a direct physical loss. In Count II, which is pled in the alternative, Travelers alleges that any damage to the Mechanical Equipment falls under a provision in the Policy that excludes coverage for any loss or damage caused by rust or corrosion. In essence, then, the question raised by Travelers' motion for summary judgment on Counts I and II is whether Travelers owes Marion anything under the Policy for any damage to the Mechanical Equipment. The answer to that question is, quite plainly, no.

As noted above, Marion has identified 84 pieces of Mechanical Equipment which it alleges were damaged as a result of the fire. Marion does not allege that the Mechanical Equipment suffered any damage *during* the fire, but rather alleges that it "was damaged because, after the catastrophic destruction of the [North Powerhouse], there was no way for [Marion] to control the environment within the walls of its massive facility, no way to operate that equipment to prevent damage from non-use, and no funds forthcoming from Travelers that could have been used to begin to make repairs or to otherwise protect the equipment." Marion's Brief at 3. Marion's theory raises several legal and factual issues; however, as Travelers points out in its brief, as to 76 of the 84 pieces of Mechanical Equipment, Marion's claim suffers from one

fundamental, and fatal, flaw: Marion points to absolutely no evidence of record that any of them are damaged. In the absence of such evidence, there is simply no theory under which Marion is entitled to any payment under the Policy for those 76 pieces. The same is true with regard to the fire suppression equipment addressed in Travelers' motion.[2]

Travelers' motion is just as easily resolved with regard to the remaining eight pieces of Mechanical Equipment. The evidence of record indicates that those eight pieces have been inspected and that they suffer from damage which Marion's expert witness surmises was caused by non-use and being in an uncontrolled environment during the two years following the fire.[3] However, the only type of damage identified is that caused by rust and corrosion,[4] and that type of damage is clearly and unambiguously excluded from coverage in the Policy.[5]

Marion argues that Travelers "is estopped from relying on the rust and corrosion

---

[2] Not only is there no evidence that the fire suppression equipment was damaged as a result of the fire–or that it was damaged at all–it is not entirely clear to the Court that Marion alleges that it was. To the extent that it does, however, inasmuch as Travelers clearly seeks summary judgment on the issue of whether it is obligated to pay Marion for any damage to the fire suppression equipment and Marion failed adequately to address the issue in its response, Travelers is entitled to summary judgment on the issue.

[3] The Court expresses no opinion with regard to whether the evidence of record is sufficient to support a finding that the fire and/or Travelers' actions were the proximate cause of the rust and corrosion found on eight of the pieces of Mechanical Equipment.

[4] This is one of the facts asserted by Travelers to which Marion replies that it is "untrue and disputed." Travelers supports its assertion by pointing to the testimony of John Gay, Marion's Rule 30(b)(6) deponent, who in response to the question "has there been any damage identified to the equipment other than rust of corrosion" responded "I suspect that there's heat damage, but I don't know that anybody's identified it." Gay Dep. at 225. Marion points to no evidence of record that suggests any other type of damage exists on any of the Mechanical Equipment. Without such contrary evidence, Marion's "dispute" has no effect.

[5] Marion notes that the term "corrosion" is not defined in the Policy and appears to suggest that it is somehow ambiguous. It is not.

7

exclusion because of its unreasonable delay in settling the claim." Marion's Brief at 50. Marion articulates no legal basis for this estoppel theory, and the Court is aware of none. Marion also argues that Travelers "is estopped from hiding behind the rust and corrosion exclusion because Travelers specifically agreed to and approved the steps [Marion] took as soon as possible after the loss to preserve and protect the property." The evidence cited to by Marion in support of this argument–an internal note to the file by adjuster Fisher that Marion "did complete the necessary temporary/emergency repairs which consisted of winterizing the building"–does not support this factual allegation, as it does not indicate that any such "agreement" or "approval" was ever communicated to Marion or that Marion relied upon it in any way when it decided what steps to take to protect the Mechanical Equipment from damage after the fire. Finally, Marion argues that Travelers is estopped from enforcing the exclusion because it did not raise it until this lawsuit was filed. While Marion correctly cites *Protective Ins. Co. v. Coca-Cola Bottling Co.--Indianapolis-Inc.*, 423 N.E.2d 656, 661 (Ind. App. 1981) for the proposition that "[t]he failure of an insurer to disclaim liability or deny coverage as soon as is reasonably possible after a demand to defend has been made may result in a waiver or estoppel," that same case establishes that "[w]here the insured is not prejudiced as a result of the insurer's delay in disclaiming liability, there is no implied waiver as a matter of law and the insurer is not estopped to deny liability." Here the only delay relevant to the issue of estoppel is Travelers' delay in pointing to the rust and corrosion exclusion as a reason for refusing to pay for any damage to the Mechanical Equipment. However, there is absolutely no evidence that Marion would have been in any better position had Travelers immediately pointed to the exclusion upon learning of the damage to the Mechanical Equipment; by that time, obviously, the rust and corrosion damage

had already occurred. In the absence of any evidence that Marion was prejudiced by Travelers' delay in invoking the rust and corrosion exclusion, there is simply no basis for finding estoppel.

As the Seventh Circuit is fond of reminding litigants, a motion for summary judgment is the "put up or shut up moment in a lawsuit" that "requires the responding party to come forward with the evidence that it has." *See e.g. Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009) (citations omitted). In this case, Marion has failed to come forth with any evidence to support its claim that 76 out of 84 of the identified pieces of Mechanical Equipment suffered damage as a result of the fire. To the extent that it intended to assert a claim for any pieces of fire suppression equipment, it likewise has failed to demonstrate that they were damaged as a result of the fire. With regard to the eight pieces of Mechanical Equipment on which damage due to rust and corrosion were noted, any such damage, even if caused by the fire, are clearly excluded from coverage by an unambiguous provision in the Policy. Accordingly, Travelers' motion for summary judgment on Counts I and II of its First Amended Complaint is **GRANTED**.

*Marion's Counterclaim*

In its Counterclaim, Marion asserts a claim for breach of contract, alleging that Travelers has failed to pay it the full amount due under the Policy. Marion also a asserts a claim for bad faith, asserting that Travelers "acted with malice, fraud, gross negligence, and oppressiveness in refusing to pay [Marion's] full claims under its Policy." Counterclaim ¶ 12. Travelers moves for summary judgment on both claims.

With regard to Marion's breach of contract claim, nowhere in its lengthy brief does Marion clearly identify precisely how it believes Travelers breach the terms of the Policy. Marion points to Subsection F(4)(a) of the Policy, which provides as follows:

> 4. Loss Payment.
>
> a. In the event of a loss or damage covered by this coverage form at our option we will either:
>
> (1) pay the value of the lost or damaged property;
>
> (2) pay the cost of repairing or replacing the lost or damaged property subject to b. below;
>
> (3) take all or any part of the property at an agreed or appraised value; or
>
> (4) repair, rebuild or replace the property with other property of like kind and quality subject to b. below.

Marion then argues that Travelers failed to comply with this provision in a "timely manner," pointing out that "there was a nine month delay before Travelers made any payment to its insured, an eleven month delay before it tendered its first settlement proposal, and a delay of sixteen months before Travelers even began to assess a large portion of the loss caused by the fire and the subsequent outage." Marion Brief at 54. Marion fails to point to any provision in the contract that obligated Travelers to act more promptly than it did. In fact, Subsection F(4)(g) dictates the time within which Travelers was obligated to pay under the Policy; that provision provides that Travelers "will pay for covered loss or damage within 30 days after we receive the sworn proof of loss if . . . [w]e have reached an agreement with you on the amount of loss, or an appraisal award has been made." The parties never agreed on the amount of loss–hence this litigation–and, with the exception of the Mechanical Equipment–Travelers paid the amount arrived at by the appraisal process promptly after that process was completed. With regard to the Mechanical Equipment, the Court has determined that Travelers is not obligated to pay anything for it. Accordingly, Marion has failed to demonstrate any breach of contract by Travelers.

Marion also has failed to support its bad faith claim. As Marion recognizes, "[i]n order

to find that Travelers breached its duty of good faith in this case, a jury ultimately must find from the evidence that Travelers had 'a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will.'" Marion Brief at 56-57 (quoting *Colley v. Indiana Farmers Mut. Ins. Group*, 691 N.E.2d 1259, 1261 (Ind. App. 1998)). Aside from setting forth the applicable law, the extent of Marion's argument in support of its bad faith claim is as follows:

> Travelers makes much of its allegation that Marion T did not do enough to preserve or protect the damaged equipment after the fire. For reasons explained in other sections of this Brief, that argument is unavailing because reasonable minds could easily find that Marion T took all appropriate steps, both before and after the fire, to maintain the mechanical equipment in good repair as best it could. Apart from arguments regarding whether Marion T did a good job protecting or maintaining its equipment, it cannot reasonably be disputed that Marion T is entitled to a prompt payment by Travelers for the actual cash value of the property damaged by a covered event. This is true regardless of whether Marion T ever chooses to make repairs to that equipment. *Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349 (Ind. 1982).
>
> Here, the evidence discussed above clearly supports the inference that Travelers unreasonably and intentionally delayed its adjustment of this particular loss. (See Sec. II.C.2 above). The jury will be free to find that Travelers did so in order to put itself in a better bargaining position. *Id.* This is contrary to Travelers' duty to act in good faith. It is one thing to disagree in good faith as to the amount of recovery that may be due under the contract, but quite another to systematically ignore one entire category of damage caused by the loss, allow an unreasonably long amount of time to pass before even taking steps to assess that damage, and then raise as a defense to paying the claim an exclusion that prohibits payment for rust or corrosion where, as here, a jury will be free to conclude that the rust and corrosion occurred during Travelers' unreasonable delay. Such conduct is oppressive, and "not the result of a good faith dispute." *Transport Insurance Company v. Terrell Trucking, Inc.*, 509 N.E.2d 220, 226 (Ind.Ct.App. 1987).

Marion Brief at 57-58.

While it is not entirely clear, it appears to the Court that Marion's bad faith argument is based upon Traveler's failure to timely evaluate whether the Mechanical Equipment was damaged because of the fire and subsequent refusal to pay anything for damage to the

Mechanical Equipment. Marion seems to be arguing that Travelers purposefully delayed its assessment of damage to the Mechanical Equipment so that it could apply the rust and corrosion exclusion after the equipment rusted and corroded. The trouble with that argument–aside from the fact that there is no evidence that Travelers acted with the requisite mental state–is that Marion has offered absolutely no evidence that any of the Mechanical Equipment suffered any damage at all other than the eight pieces that have some rust and corrosion that Marion's own expert testified occurred because it sat unused and unprotected for a long period of time after the fire. The only conclusion that can be drawn from the evidence of record is that had Travelers examined the Mechanical Equipment immediately after the fire, absolutely no damage would have been found and Travelers would have been entirely justified in denying payment. Therefore any delay by Travelers *in assessing damage to the Mechanical Equipment* could not possibly have caused any damage to the Mechanical Equipment because, under Marion's own theory, until the delay occurred *there was no damage to the Mechanical Equipment to assess*. Further, Travelers cannot be said to have acted in bad faith in failing to assess damage that had not yet occurred–especially in light of the fact that Marion had not provided any specific information that suggested that the Mechanical Equipment had actually suffered damage as a result of the fire–or in refusing to pay for the rust and corrosion damage that eventually was found by Marion that was clearly excluded under the Policy.

  Perhaps Marion's argument is meant to encompass a claim that Travelers acted in bad faith with regard to its assessment of the amount it owed under the Policy for the damage that was clearly caused by the fire. In Section II.C.2 of its brief, which Marion cites to (without elaboration) as containing the evidence that supports its bad faith claim, Marion points to the

following:[6]

- Soon after the fire, adjuster Fisher contacted the underwriter to "see if there was a limitation on coverage due to vacancy."

- A month after the fire, Travelers set its reserves to $2 million "even though an electrical engineer who had visited the site for Travelers to perform a cause and origin investigation[7] had suggested the damage could be as high as $5 million to $6 million, *excluding* smoke damage to the building.

- Adjuster Fisher "decided that she would seek to examine the insured's intentions with regard to the Facility and use those intentions as a way to decrease the amount Travelers would pay for the loss" because, she surmised at the time, "[d]amaged electrical equipment may have little value if the intentions of the policyholder was to remove the same."

- Adjuster Fisher told Marion during a phone call in November or December that Travelers would probably make an offer in the $5 million to $6 million range and suggested that Marion hold off on hiring its own contractors (and spending the $25,000 provided for in the Policy for paying the contractors) until after Travelers' own contractors completed their estimates and Travelers made an offer to Marion.

---

[6] The Court has not included in this summary facts that relate solely to Travelers' treatment of the Mechanical Equipment claim, inasmuch as the Court has already determined that that cannot be the basis of a bad faith claim.

[7] The Court notes that there is no evidence that the engineer was qualified to determine the dollar amount of damage or that the engineer's estimate was of the actual cash value of the damaged items rather than the replacement cost (or some other irrelevant measure).

- Travelers contractors moved slowly; indeed, by the end of February 2006 they had done 'virtually nothing" and Travelers did not receive their estimates until June 2006, more than eight months after the fire.

- Travelers' estimator applied a 67% depreciation to the switch gear destroyed in the fire and admitted that his depreciation calculation was "simply a subjective or educated guess."

- Travelers took the position that "'depreciation will have to be considered in any repairs' since the policy provided coverage for actual cash value."

Marion does not explain how these facts demonstrate that Travelers failed to act in good faith to evaluate Marion's loss from the fire, and the Court fails to see how they do. Marion complains about how long it took Travelers' contractors to prepare their estimates; however, "[b]eing slow or unresponsive is not the equivalent of 'dishonest purpose, moral obliquity, furtive design, or ill will.'" *National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 524 (7th Cir. 2008) (quoting *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind.2005) and citing *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 520 (Ind. 1993) ("[T]he lack of diligent investigation alone is not sufficient to support an award [for bad faith]."). Further, while Fisher may have been overly optimistic in her prediction of what Travelers' initial offer would be, Marion offers no evidence to suggest that she acted out of some "furtive design" to avoid or delay paying Marion what it was owed under the Policy. Marion also offers no evidence to support its implied allegation that Travelers somehow acted improperly in applying depreciation to arrive at actual cash value or that the methods it employed to calculate depreciation were unreasonable. Finally, there is nothing inherently nefarious about Fisher taking the time to confirm that coverage was

available under the Policy even though the building in question was vacant, and in light of the fact that the fire occurred during salvage operations, it seems reasonable to the Court that Fisher queried whether the electrical equipment damaged in the fire was also intended to be salvaged by Marion.

Marion has not presented evidence from which a reasonable jury could determine that Travelers acted in bad faith. Accordingly, Travelers is entitled to summary judgment on that claim.

*Effect of the Appraisal*

There is one final issue to address. The appraisal process as contemplated by the Policy includes a binding determination by the appraisers regarding the "amount of loss," which Marion argues includes a determination that the loss in question (1) occurred; and (2) was covered by the Policy. The final report itself makes it abundantly clear that no such determination was made; the report acknowledges that there is a dispute regarding whether the Mechanical Equipment was "damaged as a result of an insured peril" and states that "[i]f it is determined that [the Mechanical Equipment was] damaged by an insured peril, then the actual cash value of that equipment is" as set forth in the report. Therefore, Marion argues, the appraisal award must be set aside because the appraisal process set forth in the Policy was not followed and the appraisers failed to fulfill their duty to determine the "amount of loss."

In support of its argument, Marion cites *CIGNA Ins. Co. v. Didimoi Property Holdings*, 110 F. Supp.2d 259 (D. Del. 2000), in which the court did, indeed, conclude that "in the insurance context, an appraiser's assessment of the 'amount of loss' necessarily includes a determination of the cause of the loss, as well as the amount that it would cost to repair that

15

which was lost." The Court notes that the *CIGNA* court specifically recognized that there was a "split of authority on this issue with some cases squarely holding that the appraisers may not consider causation, some cases squarely holding that the appraisers may consider causation, and still some cases expressing a more ambiguous view." *Id.* at 265. The Indiana Supreme Court apparently has not spoken on the issue; however, the Court need not predict how that court would rule, because even if the *CIGNA* decision were binding precedent Marion would not be entitled to the relief it seeks.

The *CIGNA* court clearly recognized that "coverage issues," such as whether a policy exclusion applied to a particular category of damage, were reserved for the court, not the appraisers. Therefore Marion is incorrect in its suggestion that the appraisal report should have resolved the issue of Travelers' liability under the Policy. Rather, the holding of *CIGNA* would simply mean that the appraisers should have addressed the issue of whether the each piece of the Mechanical Equipment was damaged and, if so, whether that damage was caused by the fire. However, it would be futile for the Court to set aside the appraisal report because the appraisers failed to make that determination because, as discussed above, the only damage alleged by Marion was caused by rust and corrosion, and the Court has determined that rust and corrosion damage is excluded from coverage under the Policy–a determination that, even under the holding of *CIGNA*, is for the Court, not the appraisers. *See also Weidman v. Erie Ins. Group*, 745 N.E.2d 292 (Ind. App. 2001) (appraisal process determines the "amount of the loss," but that is not necessarily equivalent to the amount of the insurer's liability). Therefore even assuming that the appraisal process in this case was flawed because the appraisers did not determine the existence of damage to the Mechanical Equipment and the causation of any such damage, the error was

harmless.

## CONCLUSION

For the reasons set forth above, both of Travelers' motions for summary judgment are **GRANTED** in their entirety. This resolves Marion's counterclaim and Counts I and II of Travelers' First Amended Complaint. The Court requests that Magistrate Judge Lynch schedule a status conference in this case to address the issue of what, if anything, remains to be resolved by the jury trial scheduled for July 19, 2010. The parties should be prepared to discuss with Magistrate Judge Lynch whether a trial remains necessary and, if so, how long the trial will take. The parties are reminded of the pretrial preparation deadlines set forth in ¶ VIII of the case management plan in this case, which requires them to make certain pretrial filings beginning two weeks prior to the final pretrial conference, which is scheduled for June 17, 2010. In addition, the parties are urged to review the Trial Procedures found in docket no. 54 prior to the final pretrial conference.

SO ORDERED:   05/12/2010

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification